IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JERRY COLEMAN,                     )
                                   )
            Plaintiff,             )
                                   )
v.                                 )          Case No. 1:09-cv-2216-TMP
                                   )
CHRIS SPARKS and                   )
SHAUN FIRESTONE,                   )
                                   )
            Defendants.            )

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed October 19, 2010, by the defendants, Chris Sparks and Shaun Firestone. Defendants seek dismissal of all of plaintiff's claims based upon the statute of limitations, qualified immunity, and other grounds based upon the merits of the plaintiff's claims. This matter has been fully briefed. The court has considered the pleadings, evidence, and arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this memorandum opinion.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The current version of Rule 56 still requires that the nonmoving party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

2

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need

not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## SUMMARY JUDGMENT FACTS

Plaintiff Jerry Coleman brought this action seeking declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1983 and Alabama state law, contending that the defendants arrested him without arguable probable cause, injured him physically during the arrest, and then maliciously prosecuted him.  He asserts a federal claim under § 1983 for malicious prosecution,[1] as well as state-law claims for trespass to real property,[2] trespass to the person of the plaintiff,[3] assault and battery,[4] and false arrest.[5]  Plaintiff apparently agrees that there is no basis for "municipal liability," as alleged in Count V of the complaint.[6]  Coleman's claims arise from an incident that occurred on July 4, 2007, at Coleman's

---

[1]  See Count III of the complaint.

[2]  Although labeled "Willful and Malicious Trespass, Assault and Battery and Trespass to the Person or Liberty of Another – State Law," the text of Count I focuses on trespass by the defendants "upon Plaintiff's property [which] interfered with his quiet enjoyment of the same."

[3]  Count II is labeled "Trespass to the Person and Liberty – State Law."  It alleges that the defendants "trespassed against Plaintiff's body," "falsely imprisoned him... without... probable cause," and "assaulted [plaintiff] in a rude and hostile manner in such a way as to imply malice, willfulness and bad faith."

[4]  See Count IV of the complaint.

[5]  See Count II of the complaint.

[6]  See Plaintiff's brief in opposition to summary judgment (Doc. 22), p. 21.

4

home in Anniston, Alabama, during which Coleman was arrested by two Anniston Police Department officers, defendants Chris Sparks and Shaun Firestone.

Viewing the pleadings in the light most favorable to the non-moving party, the plaintiff, the following facts are relevant to the instant motion. Between 10:30 and 11:00, on the evening of the Fourth of July in 2007, a group of adults and children were setting off fireworks from the yard of the home across the street from Coleman's mother's residence. Coleman lived in a house directly next to that of his mother. Coleman's mother, Virginia, feared that the fireworks might damage her home, so she called the police several times to complain about the fireworks. Virginia was in her yard with a garden hose because she was fearful that the fireworks would cause a fire. Coleman's wife, Rhonda, also was with Virginia in Virginia's yard. At least two Anniston police officers, defendants Sparks and Firestone, responded to the call. Plaintiff was inside his home next door, eating a watermelon. Suffering from a bout of gout, Coleman had spent the day lying in bed.

When the defendant officers arrived, they first went to speak with Virginia and Rhonda about the fireworks. Although fireworks in Anniston are illegal, the overwhelming number of fireworks incidents that holiday prompted officers merely to warn people that fireworks were illegal, without citing them or otherwise instituting charges against such people. After speaking with Virginia and Rhonda, the officers agreed to go across the street to tell the family setting off the fireworks that they must cease due to their illegality.  As the officers were walking across the street, Coleman came to the front door of his home and told the officers, who were standing in the yard at the time, that if they couldn't stop the fireworks he would "call someone who could." Rhonda told the plaintiff to go back into the house, which he did, closing the door behind him. The defendant officers told

Rhonda that they needed to talk to the plaintiff.  Rhonda and Virginia went into the plaintiff's home

to get the plaintiff to come talk to the officers.  The defendants entered the home behind the two

women, without invitation or permission, pushing past them, knocking Virginia to the floor.

Although plaintiff was hobbled by gout and was using the door frame to steady himself as he came

down the hall, Sparks grabbed plaintiff around the neck and threw him to the floor.  Sparks wrestled

with plaintiff, yelling for him to put his hands behind his back to be handcuffed, but plaintiff told

the officer that he was not able to put his hands behind his back.  Sparks had plaintiff face down on

the floor with his knee in plaintiff's back.  Ultimately, Sparks handcuffed Coleman and refused to

loosen the cuffs after he asked them to do so.  Officer Firestone did not physically touch plaintiff

during any of the struggle, but he did not intervene to stop or temper Sparks' handling of the plaintiff.

Firestone also refused Virginia's and Rhonda's requests to release or loosen the handcuffs.

Coleman was put into the police car and taken to the police station, where he was booked into

the jail for disorderly conduct and resisting arrest.  He remained in jail only a few hours before being

released on bond, early on the morning of July 5, 2007.  Two days later, on July 7, 2007, Officer

Sparks filed and swore to two complaints before the Anniston city magistrate, charging plaintiff with

disorderly conduct and resisting arrest.  Plaintiff was not re-arrested or otherwise taken into custody,

but summoned to appear in the Anniston Municipal Court to answer the charges.  He was found

guilty of both charges in municipal court, but appealed to the Calhoun County Circuit Court, where

he was acquitted after a jury trial.

**DISCUSSION**

Defendants filed their instant motion for summary judgment, arguing that Coleman's claims arising from the arrest itself are time-barred.  Further, his claim under § 1983 for malicious prosecution, defendants assert, is due to be dismissed because the plaintiff has failed to demonstrate each element of the claim.  The defendants further assert that the claims also are due to be dismissed because the officers are entitled to qualified immunity on the federal claims and to discretionary-function immunity on the state-law claims.

**A. § 1983 Claim**

**1.  Statute of Limitations**

At the outset, as outlined above, the court reads the complaint to allege only one federal claim under § 1983, that the defendants subjected plaintiff to a malicious prosecution in violation of his rights under the Fourth Amendment.  Although the defendants argue that the plaintiff has alleged § 1983 claims for excessive force, false arrest, or false imprisonment, Count III of the complaint explicitly refers only to malicious prosecution.  Nonetheless, even if plaintiff has attempted to allege federal constitutional claims for excessive force, false arrest, and false imprisonment, they  are due to be dismissed because the claims are barred by the applicable two-year statute of limitations.  It is well settled that, pursuant to 42 U.S.C. § 1988(a), statutes of limitations are adopted from the laws of the state in which the § 1983 claim accrued – in this case, Alabama.  The United States Supreme Court has held that Alabama Code § 6-2-38(l) applies to all § 1983 claims arising from wrongful conduct that took place in Alabama.  Section 6-2-38(l)  provides a two-year limitation period for

7

personal injury torts comparable to those that might be alleged here.  Defendants point out that such claims for excessive force, false arrest, and false imprisonment all accrued when the plaintiff was handcuffed and taken into custody on  July 4, 2007.  Because the complaint was filed more than two years later, on November 1, 2009, such claims are time barred.  Accordingly, in the event plaintiff has attempted to allege these claims (which the court does not believe have been pleaded) the motion as to the § 1983 claims alleging that the defendants used excessive force, falsely arrested, and falsely imprisoned the plaintiff, is due to be granted, and those claims are due to be dismissed.

### 2.  Malicious Prosecution

The court reads the complaint to allege as the sole § 1983 claim that the defendants maliciously prosecuted the plaintiff by instituting charges against him on July 7, 2007, and prosecuting them thereafter.  More specifically, the plaintiff asserts that the defendants "instituted a judicial proceeding against the plaintiff by signing an affidavit and/or complaint charging Plaintiff with a criminal violation." (Complaint, ¶ 61).  The defendants claim that the instant complaint does not properly allege the elements of a federal malicious prosecution claim because (1) it does not assert a seizure sufficient to implicate the Fourth Amendment, (2) there is no demonstration of causation, and (3) the defendants had probable cause to prosecute him.  In addition, defendants assert that they are entitled to qualified immunity to shield them from any liability for the alleged malicious prosecution.

As a threshold matter, it appears to be undisputed that only defendant Sparks signed and swore to the complaints charging plaintiff with these offenses.  Defendant Firestone was not

involved in the "initiation" of the prosecution, other than his participation in the preceding arrest of Coleman on July 4, 2007.  Under no circumstances set out here, therefore, can Firestone be liable to the plaintiff for a malicious prosecution — he did not prosecute the plaintiff.  After he helped arrest plaintiff on July 4, it appears he had no further involvement in the matter.

To determine whether plaintiff has set forth his § 1983 claim of malicious prosecution adequately, the court looks to both federal and state law.  The Eleventh Circuit Court of Appeals has stated:

> To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. *See Uboh*, 141 F.3d at 1002-04; *Whiting*, 85 F.3d at 584-86; *Kelly*, 21 F.3d at 1553-55.  As to the constituent elements of the common law tort of malicious prosecution, this Court has looked to both federal and state law and determined how those elements have historically developed. *Uboh*, 141 F.3d at 1002-04; *Whiting*, 85 F.3d at 584-86. For example, in *Uboh*, this Court examined both federal law and Georgia law and indicated that, for purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. 141 F.3d at 1004. We note that these are also the same elements required under Alabama law for the tort of malicious prosecution. *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999).

Wood v. Kesler, 323 F.3d 872, 881-82 (11th Cir. 2003)(footnotes omitted), *cert. denied*, 540 U.S. 879 (2003).  The torts of false arrest and malicious prosecution do not overlap in time, according to the Eleventh Circuit Court of Appeals.  In Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004), the court explained that a false arrest § 1983 claim may be predicated upon the arrest that

9

precedes the institution of a prosecution, but that a malicious prosecution § 1983 claim requires a *post*-arraignment seizure that violates the constitution, and may not be predicated merely on the pre-arraignment seizure. 382 F.3d 1220, 1235-36 (11th Cir. 2004). Although Justice Ginsburg set forth in a concurring opinion in Albright v. Oliver, 510 U.S. 266, 276-79, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), that a "continuing seizure" may occur where a defendant is forced to appear in court or post a bond for release, that concept was not adopted by the other justices in Albright, and has since been rejected by the Eleventh Circuit Court of Appeals and by other circuits. See Whiting, 85 F.3d at 584; Reed v. City of Chicago, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996); Nieves v. McSweeney, 241 F.3d 46, 56-57 (1st Cir. 2001). The Eleventh Circuit Court of Appeals has explained:

> Next, Kingsland bears the burden of proving that she was seized in relation to the prosecution, in violation of her constitutional rights. In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted. *See, e.g.*, *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest."). Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was "not one that arose from malicious prosecution as opposed to false arrest." *Id.* at 254 n. 26.

Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004). To differentiate the federal constitutional claim for malicious prosecution from a mere state tort, a federal constitutional right must be implicated, usually under the Fourth Amendment. Further, that Fourth Amendment "seizure" must be part of the prosecution itself, not merely an event preceding the prosecution. This elemental requirement can be met where the arrest is made pursuant to a warrant issued *after* the filing of the

formal charges against the arrestee, or where the liberty of the arrestee remains restrained *after* the filing of formal judicial charges.  In Kingsland, where the defendant was required to post a $1,000 bond for her release, the court of appeals rejected her malicious prosecution claim and concluded that "we cannot go so far as to say that conditions of her pretrial release — which did not constitute a significant deprivation of liberty — constituted a seizure violative of the Fourth Amendment."  Id. at 1236.

In this case, the plaintiff has not alleged any "significant deprivation of liberty" beyond his initial warrantless, pre-arraignment arrest, and none sufficient to constitute the Fourth Amendment violation that would support a § 1983 malicious prosecution claim.  382 F.3d at 1235-36.  Under the undisputed evidence, plaintiff was arrested on July 4, 2007, and released on bond early the next morning, July 5.  Complaints formally initiating the criminal proceedings against him were not sworn and executed by Sparks until July 7, at which time Coleman was no longer restrained of his liberty.  There is no evidence, and Coleman does not allege, that he was ever thereafter re-arrested or otherwise restrained of his liberty while the prosecution proceeded.  The defendants discuss this failure of plaintiff's proof at length; however, the plaintiff has failed to address this ground for dismissal in his brief in opposition to the motion.[7]

_____

[7]  Plaintiff's discussion of malicious prosecution (Doc. 22, pp. 11-15) supports a state-law claim but does not set forth a basis for a constitutional claim of malicious prosecution under § 1983.  Plaintiff maintains that the July 4, 2007, arrest was the "illegal seizure" at issue, and was "then followed by a 'malicious prosecution.'" (Id. at p. 13).  Plaintiff cites to Whiting, but fails to note that the illegal seizure in that case occurred *after* an information was filed and, thus, after a prosecution had been instituted.  Plaintiff has not attempted to argue that the pre-arraignment bond he was released on constitutes a "seizure" for Fourth Amendment purposes.  In any event, Kingsland seems to make clear that a bond as a condition of pretrial release is not a sufficient restraint on liberty to support a federal constitutional malicious prosecution claim.

Because the defendants have demonstrated that plaintiff has failed to offer any evidence of the illegal seizure *after* a formal judicial proceeding against him was commenced, an element necessary for a malicious prosecution claim pursuant to § 1983, their motion for summary judgment on this claim is due to be granted. The court need not address the additional arguments regarding causation or absence of probable cause. Similarly, the court need not address the issue of whether the defendants are shielded from suit and liability based upon qualified immunity, because any other claim plaintiff might have under § 1983 is time-barred.[8]

**B. State-Law Claims**

Plaintiff also asserts that the defendants committed an assault and battery, a trespass to his real property, a trespass to his person,[9] a false arrest and imprisonment, and other torts in violation of Alabama law. Defendants argue that, upon dismissal of the only federal claim in the action, the court should dismiss the state-law claims without prejudice under 28 U.S.C. § 1367(c) to allow plaintiff to pursue them in Alabama state courts.

Under 28 U.S.C. § 1367(a) a court may exercise supplemental jurisdiction over any state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The district court

---

[8] The court expresses no opinion about the constitutionality or legality of plaintiff's arrest or the force used to effect the arrest. The court does not reach that question because any claim based upon excessive force or illegal arrest is time-barred, as discussed *supra*.

[9] Because the court finds that the state-law claims must be dismissed without prejudice under 28 U.S.C. § 1367(c), it expresses no opinion as to whether there is any difference between an assault and battery civil claim and a civil claim for "trespass to the person."

may decline to exercise such supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims." Arnold v. Tuskegee University, 212 Fed. Appx. 803, 811 (11th Cir., Dec. 19, 2006) citing Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619 n. 7, 98 L. Ed. 2d 720 (1988); see also Ingram v. School Board of Miami-Dade County, 167 Fed. Appx. 107, 108 (11th Cir. Feb. 10, 2006) ("Where... a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial.").  As a matter of federalism and respect to coordinate state courts, ""[s]tate courts, not federal courts, should be the final arbiters of state law." Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997).  Because plaintiff's only federal-law claim (Count III for malicious prosecution) is dismissed, the court should exercise its discretion to decline supplemental jurisdiction over the remaining state-law claims.[10]

---

[10]  Plaintiff suffers no significant prejudice from a dismissal without prejudice.  Insofar as the statute of limitations had not expired with respect to any state-law claim at the time of the filing of the complaint in this action, the limitations period has remained tolled during the pendency of this action and for another thirty days thereafter.  See 28 U.S.C. § 1367(d), which states in part, "The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  Thus, if plaintiff had a timely state-law claim at the time he filed the instant complaint, he has thirty days after the dismissal of this action to re-file in state court before the limitations period begins to run again.

### IV.  CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be granted.  The motion is due to be granted as to the federal claim against both defendants and that claim for malicious prosecution under § 1983 is due to be dismissed with prejudice.  The court declines to exercise supplemental jurisdiction over the remaining state law claims, and those claims are due to be dismissed without prejudice.  A separate order will be entered in accordance with the findings set forth herein.

DATED this 31ˢᵗ day of March, 2011.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE